2020 IL App (1st) 190908

No. 1-19-0908

Second Division
November 17, 2020

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ROBIN MASTERS, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | No. 18 L1 1485 |
| v. | ) | |
| | ) | |
| RENEE MURPHY, | ) | Honorable |
| | ) | James E. Snyder, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the
judgment, with opinion.

**OPINION**

¶ 1     On October 23, 2018, plaintiff, Robin Masters, filed a complaint against defendant, Renee

Murphy, alleging defamation and intentional interference with an existing business relationship[1]

---

[1]Masters criticizes Murphy's brief for incorrectly referring to count II as intentional interference
with a prospective business advantage. Our review of the record shows that though count II is titled as
intentional interference with a prospective business advantage, the substance actually references
intentional interference with an existing business relationship. See *Tzakis v. Berger Excavating
Contractors, Inc.*, 2019 IL App (1st) 170859, ¶ 59 ("[T]he title of the count does not control over the
substance of its claim.").

based on an alleged false statement Murphy made about Masters in January 2018. The trial court granted Murphy's motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)), finding that she was immune under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/1-101 *et seq.* (West 2016)). On appeal, Masters argues that the trial court erred in dismissing her complaint because the sections of the Tort Immunity Act relied upon by Murphy in support of dismissal were not applicable. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On October 23, 2018, Masters filed a complaint against Murphy comprising two counts: defamation (count I) and intentional interference with an existing business relationship (count II). In her complaint, Masters alleged that on January 13, 2018, when she and Murphy were both working as probationary correctional officers in the Cook County Department of Corrections (Department), Murphy falsely told Sergeant William Shepsky-Linstead that Masters handed keys to the residential treatment unit to a detainee, Megan Potter. Masters further alleged she was terminated from her employment and "experienced humiliation and damage to her reputation" as a result of Murphy's false statement.

¶ 4     On December 10, 2018, Murphy moved to dismiss Masters's complaint in a combined motion pursuant to section 2-619.1 of the Code. Therein, Murphy argued that the complaint should be dismissed pursuant to section 2-619 (735 ILCS 5/2-619 (West 2016)) because she had either absolute or qualified immunity under sections 2-204 and 2-210 of the Tort Immunity Act (745 ILCS 10/2-204, 2-210 (West 2016)). Murphy also argued that the complaint should be dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)) for failure to state a claim upon which relief could be granted. In support of the motion, Murphy submitted an affidavit stating

that she observed Masters hand "the keys to the tier, which consisted of three keys and a 'cut down' tool, to the Residential Treatment Unit to inmate Megan Potter." According to Murphy's affidavit, these keys were used to open jail doors. Murphy reported the incident to her shift commander and immediate supervisor, Sergeant Shepsky-Linstead. In the motion, Murphy cited to Title 20, section 701.140(h)(4) of the Illinois Administrative Code, which states that "[d]etainees, including trustees, shall not be permitted to handle, use or possess jail keys of any type." 20 Ill. Adm. Code 701.140(h)(4) (2014). Attached to her motion were copies of the Department's "Key and Electronic Access Device Control" policy, which states that "[u]nder no circumstances will security keys be made available to inmates regardless of their status" as well as the Department's policy on report preparation, which Murphy described as requiring reporting incidents including, *inter alia*, breaches of security.

¶ 5     Masters filed a response to Murphy's motion to dismiss, arguing that there were questions of fact that needed to be resolved and the Tort Immunity Act did not apply. She also argued that Murphy's statement was not privileged. She attached her own affidavit to the response, which contested many of the statements in Murphy's affidavit. Specifically, Masters averred that she did not violate the key policy as set out in the administrative code because she never gave the keys to Potter and, additionally, no incident report was required because she did not engage in any misconduct.

¶ 6     On April 5, 2019, the court granted Murphy's motion to dismiss the complaint. In a four-paragraph written order, the court first noted that the matter was before the court pursuant to Murphy's section 2-619.1 motion to dismiss. The court then set out the legal principles that govern dismissals pursuant to section 2-615 of the Code. In the analysis section of the order, the court addressed the parties' arguments regarding the applicability of the Tort Immunity Act. Finally, in

ruling to grant dismissal, the court stated that when Murphy made the alleged false statement she was "acting within the scope of her public employment." As such, the Tort Immunity Act applied. This appeal followed.

¶ 7                                    II. ANALYSIS

¶ 8    Masters contends that the trial court erred in dismissing her complaint and urges us to reverse and remand this matter for further proceedings. In reviewing Masters's claimed errors, we are guided by the following well-established principles.

¶ 9    Section 2-619.1 of the Code permits a party to combine a section 2-619 motion to dismiss based upon certain defects or defenses with a section 2-615 motion to dismiss based on a plaintiff's substantially insufficient pleadings. 735 ILCS 5/2-619.1 (West 2016). A section 2-619 motion to dismiss "admits the legal sufficiency of the plaintiff's claim but asserts 'affirmative matter' outside of the pleading that defeats the claim." *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). A motion to dismiss under section 2-615 tests the legal sufficiency of the complaint and challenges whether the complaint states a claim upon which relief can be granted. *Tielke v. Auto Owners Insurance Co.*, 2019 IL App (1st) 181756, ¶ 22. When ruling on a motion to dismiss under either section, "the court should construe the pleadings and supporting documents in the light most favorable to the nonmoving party." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. This court reviews a dismissal pursuant to sections 2-615, 2-619, and 2-619.1 *de novo*. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10. We may affirm the court's dismissal based upon any grounds supported by the record (*King v. City of Chicago*, 324 Ill. App. 3d 856, 859 (2001)), and because our review is *de novo*, our disposition is without regard to the trial court's reasoning (*United States Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 461 (2008)).

¶ 10    We first note that Masters makes repeated assertions in her briefs that the court improperly resolved factual disputes in ruling in favor of Murphy. Specifically, she notes that the court resolved whether Murphy's accusation regarding the keys was truthful, as well as whether when Murphy made the accusation, she was working within the scope of her duties.

¶ 11    Based on our review of the record, we find no impropriety in the trial court's review of the pleadings before it. When considering a motion to dismiss, the court must take as true the allegations in the complaint as well as any reasonable inferences from those facts. See *De Jesus v. Policemen's Annuity & Benefit Fund*, 2019 IL App (1st) 190486, ¶ 16; *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002). In this case the trial court, after reviewing the complaint and supporting documents, apparently found that Masters's allegations did not support a claim as a matter of law.

¶ 12    On appeal, as in her motion to dismiss, Murphy asserts several bases upon which the trial court's dismissal may be supported: Murphy's communication to Sergeant Shepsky-Linstead fell within an absolute and qualified privilege, Masters failed to sufficiently allege facts in support of her claim of intentional interference with a prospective business advantage,[2] and sections 2-204 and 2-210 of the Tort Immunity Act bar Masters's claims. Because we may affirm on any basis supported by the record, we limit our review to the applicability of the Tort Immunity Act, which we find to be dispositive.

¶ 13    The Tort Immunity Act protects local public entities and their public employees from liability arising from the operation of government. 745 ILCS 10/1-101.1(a) (West 2016). The

---

[2]As previously noted, Murphy characterizes this claim as one for intentional interference with a prospective business advantage. However, we read the substance of Masters's claim as one for intentional interference with an existing business relationship.

immunity conferred by the Act is an affirmative matter that can be raised under section 2-619. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 504 (2006). It is the entity or employee's burden to assert and prove an immunity under the Act. *Wright-Young v. Chicago State University*, 2019 IL App (1st) 181073, ¶ 61.

¶ 14     Masters contends that sections 2-204 and 2-210 of the Tort Immunity Act are not applicable to her claims and that the court's dismissal on that basis was, therefore, in error. Although the trial court does not specifically mention any particular section of the Act in its ruling, we agree with Masters that section 2-204 has no application in this case. Section 2-204 provides: "[A] public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204 (West 2016). Clear from its language, section 2-204 "provides immunity from vicarious liability claims." *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 42 (plurality opinion). Masters has not pleaded vicarious liability. Thus, that section offers no support to Murphy.

¶ 15     We reach a contrary conclusion with respect to section 2-210, however. Section 2-210 provides: "A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-210 (West 2016). "Provision of information," which is a separate category from "negligent misrepresentation" under the Act, affords a broad protection to public employees acting within the scope of their employment. *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 111 (2011). To establish immunity under section 2-210's provision of information category, Murphy needed to show that (1) she was a public employee who (2) provided information while (3) acting within the scope of her employment. In her complaint, the allegations in which we accept as true, Masters

alleges that Murphy is employed by Department. There is no dispute that the Department is a public entity, making Murphy a public employee. Further, the allegations in the complaint allege that Murphy provided information to Sergeant Shepsky-Linstead, namely that Masters handed the keys to an inmate. Thus, there is also no dispute that information was provided. The only issue remaining, and the only criterion under section 2-210 of the Act with which Masters takes issue, is whether Murphy's provision of the information to Sergeant Shepsky-Linstead was conduct that fell within the scope of her employment. Masters complains that the trial court's resolution of the scope of employment issue, a disputed factual matter, was improper and, for that reason, dismissal on the pleadings was in error.

¶ 16    The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). As we noted above, a motion to dismiss pursuant to section 2-619 asserts that other affirmative matter defeats the cause of action. An affirmative matter is something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 120-21 (2008). The "affirmative matter" contemplated in a motion to dismiss must be apparent on the face of the complaint; otherwise, the motion must be supported by affidavits or other evidentiary materials. *Van Meter*, 207 Ill. 2d at 377; see 735 ILCS 5/2-619(a) (West 2016). Once the defendant satisfies this initial burden of going forward on the motion, the burden then shifts to the plaintiff to establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). If, after considering the pleadings and the

affidavits, the court finds that the plaintiff has failed to meet the shifted burden, the defendant's motion to dismiss may be granted and the case properly dismissed. *Id.*

¶ 17    Murphy maintains that she was acting within the scope of her employment as a correctional officer when she reported the key incident to her immediate supervisor. Attached as exhibits to her motion were the Department's key control policy, as well as the policy regarding incident reports. In her affidavit, Masters countered that the policies have no application in this case because there had been no violation of the Department's key policy and Murphy was under no requirement under the report policy to engage in an investigation.

¶ 18    Even accepting that the policies required no affirmative act by Murphy, given their substance, the court could reasonably infer that when Murphy provided information concerning the keys to her superior, she was acting within the scope of her employment. Notably, Masters alleged that she was terminated on account of Murphy's report. The inference to be drawn is that the Department determined Murphy's report concerning the key to have been credible and compliant with its policies regarding the management of keys. Thus, the Department's response upon receiving the information additionally supports a conclusion that Murphy was acting within the scope of her duties. We note in passing that in Illinois, " 'even if a statement is defamatory, under Illinois law, the defendants would have immunity for their statements made within the scope of their authority.' " *Cox v. Calumet Public Schools District 132*, 180 F. Supp. 3d 556, 563 (N.D. Ill. 2016) (quoting *Horwitz v. Board of Education of Avoca School District No. 37*, 260 F.3d 602, 617 (7th Cir. 2001)); see also *Klug v. Chicago School Reform Board of Trustees, District No. 299*, 197 F.3d 853, 861 (7th Cir. 1999) (citing *Blair v. Walker*, 64 Ill. 2d 1 (1976)). Section 2-210's provision of immunity cannot be overcome by a showing of improper motivation or knowledge of the statement's falsity, including malice. *Horwitz*, 260 F.3d at 618.

¶ 19    Other than her assertion that Murphy's report regarding the key handoff was untrue, Masters presented nothing to rebut the inference that Murphy was acting within the scope of her employment. Nevertheless, Masters argues that scope of employment is a factual issue that required, for its resolution, an evidentiary hearing. Based on the record before us, we disagree.

¶ 20    Because dismissal under section 2-619 resembles the grant of a motion for summary judgment, an appeal from such a dismissal is the same in nature as an appeal following a grant of summary judgment. *Van Meter*, 207 Ill. 2d at 377. On appeal of a section 2-619 dismissal, the reviewing court must consider whether " 'the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997) (quoting *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116-17). A section 2-619 motion permits resolution of easily proved issues of fact about the asserted affirmative matter. *Reynolds v. Jimmy John's Enterprises*, *LLC*, 2013 IL App (4th) 120139, ¶ 53.

¶ 21    In *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 165 (2007), the court noted that ordinarily, scope of employment is a factual issue, which is usually inappropriate to resolve in the context of reviewing the grant of a motion for summary judgment. However, the court held that where the facts involved are undisputed, resolution is an issue of law. *Id.* at 171; see also *Krickl v. Girl Scouts, Illinois Crossroads Council, Inc.*, 402 Ill. App. 3d 1, 5 (2010) ("Although the existence of an agency relationship usually is a question of fact, it is an issue of law where the facts relating to the relationship are undisputed ***."). Based on the pleadings and other evidentiary materials before the court, we find that such is the case here. In other words, we find that whether Murphy was acting within the scope of her duties is easily proved and there are no material issues of fact that would have precluded dismissal.

¶ 22    The supreme court's analysis in *Bagent* not only provides guidance but bolsters our finding here. In determining whether conduct is within the scope of one's employment, the court expressly adopted the following factors:

>   " ' "(1) Conduct of a servant is within the scope of employment if, but only if:
>
>>   (a) it is of the kind he is employed to perform;
>>
>>   (b) it occurs substantially within the authorized time and space limits;
>>
>>   (c) it is actuated, at least in part, by a purpose to serve the master ***[.]
>
>   ***
>
>>   (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." (Restatement (Second) of Agency § 228 (1958).)' " *Bagent*, 224 Ill. 2d at 164 (quoting *Pyne v. Witmer*, 129 Ill. 2d 351, 360 (1989)).

A finding that the challenged conduct is within the scope of employment requires that all three criteria be met. *Id.* at 165; see also *Adames v. Sheahan*, 233 Ill. 2d 276, 303 (2009).

¶ 23    Based upon our review, we find the three criteria to have been met. First, it is axiomatic that correctional officers are responsible for the security of detainees, some of whom may be violent offenders. Not only is it critical for security purposes to keep keys to the jail out of the hands of inmates, it is in fact required by the Department's key policy and the administrative code. That the proffered policies do not mandate a report or an investigation does not render Murphy's conduct in providing information about an alleged infraction outside of the scope of her employment. On the contrary, the policies provide insight, if any is truly needed, regarding the propriety of the information provided. Murphy informed Sergeant Shepsky-Linstead of Masters's

violation of the policy to maintain the necessary safety internal to the facility, as well as to the public. We conclude that Murphy's conduct was of the type that she was employed to perform as a correctional officer. Thus, the first criterion is satisfied.

¶ 24    We conclude similarly with respect to the second and third criteria. Murphy was clearly within the time and space confines of her position as a correctional officer. Her conduct involved only Masters, with whom she was partnered, and their superior officer, at a time when she was on duty, and operating within the confines of the Department. Finally, Murphy was serving the interests of the Department when she provided information regarding an alleged infraction regarding the keys. Based on these facts, we conclude as a matter of law that Murphy's provision of information occurred within the scope of her employment.

¶ 25    Based upon our review of the pleadings, Murphy was immunized from liability pursuant to section 2-210 of the Tort Immunity Act. We therefore find that the trial court did not err in dismissing Masters's complaint.

¶ 26                              III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court.

¶ 28    Affirmed.

---

**No. 1-19-0908**

---

| | |
|---|---|
| **Cite as:** | *Masters v. Murphy*, 2020 IL App (1st) 190908 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L1-1485; the Hon. James E. Snyder, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Joel F. Handler, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Mona Lawton, and Jay Rahman, Assistant State's Attorneys, of counsel), for appellee. |

---